**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ROBERTO VLADIMIR PORTILLO MARTINEZ, <br><br>                 Petitioner, <br><br>     v. <br><br> PATRICIA H. HYDE, Field Office Director, Boston Field Office, United States Immigration and Customs Enforcement; TODD LYONS, Acting Director, United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security, PAMELA BONDI, Attorney General of the United States, and ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility. <br><br>                 Respondents. | Civil Action No. 1:25-CV-11909-BEM <br><br> Leave to File Excess Pages Granted on October 14, 2025 |

**RESPONDENTS' OPPOSITION TO PETITIONER'S**
**SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

Respondents, by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, submit this opposition to Petitioner Roberto Vladimir Portillo Martinez's ("Petitioner") Second Amended Petition for Writ of Habeas Corpus ("Petition"). Doc. No. 23.

**INTRODUCTION**

This Court cannot extend the writ of habeas corpus unless an individual "is in custody in violation of the Constitution or laws or treaties of the United States". 28 U.S.C. § 2241(c)(3). Here, Petitioner fails to demonstrate that his custody violates the Immigration and Nationality Act ("INA"), its implementing regulations, or the Constitution.

In 2016, Petitioner applied for admission at the Hidalgo, Texas port of entry pursuant to 8 U.S.C. § 1225(a)(1).  *See* Doc. No. 16-1, ¶ 7, Declaration of Assistant Field Office Director, Keith Chan.  After he was inspected by U.S. Customs and Border Protection ("CBP") as required by Section 1225(a)(3), he was designated as an unaccompanied alien child ("UAC") and transferred into the custody of the Office of Refugee Resettlement ("ORR") pursuant to 8 U.S.C. § 1232(b)(3).  *Id.*  Now, at the age of twenty-two (22), Petitioner is no longer a UAC and therefore is not entitled to the protection against mandatory detention that UACs receive.[1]  *See Jose L.P. v. Whitaker*, 431 F. Supp. 3d 540, 550 (D.N.J. 2019) ("There is no good argument that [p]etitioner should *still* be treated as an unaccompanied "child" after his 18th birthday."); 8 C.F.R. § 236.3(d)(2) ("An alien who is no longer a UAC is not eligible to receive legal protections limited to UACs under the relevant sections of the Act.").

As such, Petitioner's claim that he cannot be subject to detention under 8 U.S.C. § 1225(b) fails as he remains an arriving alien despite his prior transfer to ORR as an UAC and his receipt of Special Immigrant Juvenile ("SIJ") classification.  *See Mendez Ramirez v. Decker,* 612 F. Supp. 3d 200, 219–21 (S.D.N.Y. 2020) (Finding no statutory or constitutional violation for detention of an alien who was previously designated as a UAC but had since turned 18).  As such, Petitioner's request that this Court find that his detention is controlled by U.S.C. § 1226(a) is without merit.

Petitioner's detention also comports with the Constitution as the Supreme Court, the U.S. Court of Appeals for the First Circuit, and this Court have held that detention of arriving aliens like Petitioner is constitutional and such aliens are entitled only to the procedural protections and

---

[1] *See* 6 U.S.C. § 279(g)(2) (defining a UAC as a child who has not attained 18 year of age).

process provided by statute. *See e.g., Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("*Mezei*") (Explaining that "an alien on the threshold of entry stands on a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'") (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (Alien detained at border "has only those rights regarding admission that Congress has provided by statute" and "the Due Process Clause provides nothing more…"); *Amanullah v. Nelson*, 811 F.2d 1, 9 (1st Cir. 1987) (Explaining that "the detention of the appellants is entirely incident to their attempted entry into the United States and their apparent failure to meet the criteria for admission—and so, entirely within the powers expressly conferred by Congress."); *Benito Vasquez v. Moniz,* No. CV 25-11737-NMG, 2025 WL 1737216, at *2 (D. Mass. June 23, 2025) (Explaining that for an alien subject to Section 1225(b), his "continued detention [] does not offend the statutory and regulatory procedure to which the due process clause entitles him."); *Oppong v. Hodgson*, No. CV 16-12455-RGS, 2017 WL 841276, at *2 (D. Mass. Mar. 3, 2017) (Denying habeas petition by arriving alien subject to Section 1225(b) as no due process violation claim could be raised at least until six months of detention).

Petitioner's additional claim that his detention violates the Constitution because the Board of Immigration Appeals ("BIA") granted ICE's motion to stay an immigration judge's release order must also be rejected for multiple reasons.

First, the Court lacks jurisdiction to review the BIA's stay order as 8 U.S.C. § 1226(e) states that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." *See A. v. Garland,* No. 23-CV-1696 (PJS/TNL), 2023 WL 8469655, at *1–2 (D. Minn. Dec. 7, 2023)

(Explaining that the court "has doubts about whether it has jurisdiction to essentially review and reverse an order of the BIA granting a stay pending the BIA's resolution of an administrative appeal.").  Additionally, no due process violation occurred when the BIA granted such motion. *See El-Dessouki v. Cangemi,* No. CIV 063536 DSD/JSM, 2006 WL 2727191, at *3 (D. Minn. Sept. 22, 2006) ("Petitioner's disagreement with the BIA's expeditious resolution of ICE's motion in ICE's favor does not rise to a level of a violation of his right to procedural due process.").

Here, ICE moved to stay the IJ's release order arguing that Petitioner was not eligible for a bond hearing as an arriving alien and alternatively, even if eligible, Petitioner should not have been released due to public safety concerns stemming from past criminal arrests and his asserted membership in the 18th Street Gang.  Doc. No. 16-1, ¶¶ 28, 31.  Petitioner could have, but did not, file a motion to reconsider the BIA's grant of the stay order and can make appellate arguments before the BIA that the IJ's decision should not be reversed.  *See Organista v. Sessions*, No. CV-18-00285-PHX-GMS (MHB), 2018 WL 776241, at *3 (D. Ariz. Feb. 8, 2018) (finding that petitioner who did not receive opportunity to contest stay of release had not shown likelihood of success on claim that he had not received sufficient opportunity to be heard, given availability of reconsideration motion).   Petitioner's challenge to the BIA's grant of ICE's motion to stay his release and his challenge to the underlying statutory basis for his detention fails and this Amended Petition must be denied.

## **BACKGROUND**

### A.  **Relevant Statutory and Regulatory Framework.**

The INA provides a statutory scheme for the civil detention of aliens pending a decision during removal proceedings as well as once a final order of removal has been entered.  *See generally* 8 U.S.C. §§ 1225, 1226, 1231.   The time and circumstances of entry, as well as the

stage of the removal process, determines where an alien falls within this scheme and whether detention of the alien is discretionary or mandatory.

1. **8 U.S.C. § 1225 Mandates Detention for Applicants for Admission, including Arriving Aliens.**

An applicant for admission is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States [] whether or not at a designated port of arrival …." 8 U.S.C. § 1225(a)(1). All "aliens [] who are applicants for admission … shall be inspected by immigration officers" to determine if they are admissible to the United States. *Id.*, § 1225(a)(3). The term "admission" is defined by the INA to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

Applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) applies to arriving aliens and "certain other" noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.*; 8 U.S.C. § 1225(b)(1)(A)(i), (iii). Section 1225(b)(1) applicants for admission are typically subjected to expedited removal proceedings, but "DHS does, indeed, have the discretion to place § (b)(1) applicants into standard [8 U.S.C.] § 1229a removal proceedings". *Bollat Vasquez v. Mayorkas*, 520 F. Supp. 3d 94, 110 (D. Mass. 2021).[2] Section 1225(b)(2) is "broader" and "serves as a catchall provision." *Jennings*, 583 U.S. at 287. It "applies to all applicants for admission not covered by § 1225(b)(1)." *Id.* This provision also mandates detention during removal proceedings. 8 U.S.C. § 1225(b)(2)(A).

---

[2] DHS cannot institute expedited removal proceedings against an UAC and must instead place the UAC into removal proceedings. *See* 8 U.S.C. § 1232(a)(5)(D)(i).

By regulation, an arriving alien is "an applicant for admission coming or attempting to come into the United States at a port-of-entry …". 8 C.F.R. § 1.2. "An arriving alien remains an arriving alien even if paroled [], and even after any such parole is terminated or revoked." *Id.* Pursuant to regulation concerning the "scope of examination" for an applicant for admission, an "alien present in the United States who has not been admitted or paroled … is subject to the provisions of section 212(a) of the Act [8 U.S.C. § 1182] and to removal under section 235(b) [8 U.S.C. § 1225(b)] or 240 of the Act [8 U.S.C. § 1229a]." 8 C.F.R. § 235.1(f)(2). Per regulation, "any arriving alien who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings … shall be detained in accordance with [8 U.S.C. § 1225(b)]." 8 C.F.R. § 235.3(c)(1).

The Supreme Court has confirmed that this statutory mandate for detention extends for the entirety of removal proceedings. *Jennings*, 583 U.S. at 302 (Section 1225(b) "mandate[s] detention of aliens *throughout the completion of applicable proceedings* and not just until the moment those proceedings begin." (emphasis added)). While an applicant for admission is not entitled to release or a bond hearing by statute or regulation, ICE has discretion to parole applicants for admission from custody. *See* 8 U.S.C. § 1182(d)(5).[3]

### 2. Discretionary Detention under 8 U.S.C. § 1226(a).

For aliens who are not applicants for admission as defined by 8 U.S.C. § 1225(b)(1), 8 U.S.C. § 1226 "generally governs the process of arresting and detaining that group of aliens

---

[3] An Immigration Judge has no authority over the apprehension, custody, and detention of arriving aliens. *Matter of Osewisu*, 21 I&N Dec. 19 (BIA 1998) (citing 8 C.F.R. § 1003.19(h)(2)(i)(B)). However, an alien can "seek[] a determination by an immigration judge that [she] is not properly included within" the groups of individuals that the IJ lacks authority to conduct bond hearings. 8 C.F.R. § 1003.19(h)(2)(ii).

pending their removal." *Jennings*, 583 U.S. at 288.   Pursuant to Section 1226(a), immigration authorities have discretion to arrest an alien subject to removal from the United States and then either continue detention or to release the alien on "bond … or conditional parole."  *Id.* § 1226(a)(1)-(2).  Per regulation, immigration authorities have discretion to release an individual under this statutory provision "provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."  8 C.F.R. § 236.1(c)(8).  If the immigration officer opts for continued detention, the alien can seek review of that decision at a bond hearing before an IJ.  *Id.* § 236.1(d)(1).  At the bond hearing, ICE bears the burden of proof to demonstrate danger by clear and convincing evidence or flight risk by a preponderance of evidence. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021).

An IJ's custody decision may be appealed to the BIA by either party.  8 C.F.R. §§ 236.1(d)(3); 1003.19(f).  ICE's filing of an appeal "shall not operate to delay compliance with the order (except as provided in § 1003.19(i))".  8 C.F.R. § 236.1(d)(4).  Pursuant to 8 C.F.R. § 1003.19(i), the BIA "has the authority to stay the order of an immigration judge redetermining the conditions of custody of an alien when [ICE] appeals the custody decision or on its own motion."  The regulation further provides that ICE "is entitled to seek a discretionary stay (whether or not on an emergency basis) from the Board in connection with such an appeal at any time."  *Id.*  8 C.F.R. § 1003.19(i)(2) also provides ICE with authority to stay an IJ's bond order automatically, but such provision is not at issue in this case.

### 3.  Statutory and Regulatory Provisions Concerning Unaccompanied Alien Children and Special Immigrant Juvenile Status.

#### a.  Unaccompanied Alien Children.

A UAC is defined as a child who has no lawful status in the United States, has not attained

18 years of age, and has no parent or legal guardian in the United States who is available to provide care and physical custody.  6 U.S.C. § 279(g)(2); 8 C.F.R. § 236.3(b)(3).  An alien who fits this definition who applies for admission at a port of entry is classified as an arriving alien. *Mendez Ramirez*, 612 F. Supp. 3d at 206 ("Unaccompanied alien children are a subset of arriving aliens.").

According to 8 U.S.C. § 1232(b)(3), within 72 hours of a UAC entering DHS custody, the UAC must be transferred to the custody of the Secretary of Health or Human Services, specifically to ORR.  8 C.F.R. § 236.3(f).  8 C.F.R. § 236.3 governs the processing, detention, and release of alien minors, including UACs.  Per 8 C.F.R. § 236.3(a)(2), such provisions "apply to all minors in the legal custody of DHS, including minors who are subject to the mandatory detention provisions of the INA and applicable regulations".[4]  The provisions that concern UACs "transferred responsibility for care and custody of UACs who were in federal custody by virtue of their immigration status to ORR; [they] did not alter their immigration status."  *Mendez Ramirez*, 612 F. Supp. 3d at 206.

8 U.S.C. § 1232(c)(2) requires ORR to make certain determinations regarding UACs in its custody and directs ORR to place UACs with sponsors or family members.  If a UAC is in ORR custody when he turns 18 and is transferred to ICE custody at that time, such individual must be considered for "placement in the least restrictive setting available".  8 U.S.C. § 1232(c)(2)(B).  But, if the alien is neither a UAC nor in ORR custody when arrested by ICE, he is not entitled to a "least restrictive setting" determination under Section 1232(c)(2)(B).  *Mendez Ramirez*, 612 F. Supp. 3d at 210-12, 219 ("Here, Section 1232(c)(2)(B) is clear: It applies only

---

[4] Per regulation, a minor "means any alien who has not attained eighteen (18) years of age".  8 C.F.R. § 236.3(b)(1).

to UACs. Because [petitioner] was not a UAC when he was arrested by ICE, he was not entitled to a least restrictive setting determination under Section 1232(c)(2)(B)").

This is because once an UAC "has reached the age of 18 … the alien is no longer a UAC." 8 C.F.R. § 236.3(d)(2); *Jose L.P.*, 431 F. Supp. 3d at 550 ("There is no good argument that [p]etitioner should *still* be treated as an unaccompanied "child" after his 18th birthday."). After reaching 18, the previously designated UAC "is not eligible to receive legal protections limited to UACs under the relevant sections of the Act." 8 C.F.R. § 236.3(d)(2). Instead, once a UAC has reached 18, "ICE procedures shall apply." *Id.* § 236.3(d)(3).

### b. Special Immigrant Juvenile classification.

The definition of SIJ classification is set forth at 8 U.S.C. § 1101(a)(27)(J). An individual with SIJ classification can apply for adjustment of status if they are eligible, admissible, and an immigrant visa is immediately available. 8 U.S.C. § 1255; 8 C.F.R. § 245.1(e)(3)(i). In 2022, USCIS recognized that "[d]ue to ongoing visa number unavailability, the protection that Congress intended to afford SIJs through adjustment of status is often delayed for years…". USCIS Policy Alert-2022-10, March 7, 2022 https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf. USCIS made clear, however, that "[n]oncitizens without lawful status who have an approved SIJ petition remain subject to removal" because "SIJ classification does not render a noncitizen lawfully present, does not confer lawful status, and does not result in eligibility to apply for employment authorization." *Id.*

An individual who obtains SIJ classification thus receives several important benefits,[5] but is still subject to detention and removal from the United States. *See Doe v. Moniz,* No. 1:25-CV-

---

[5] The INA automatically exempts SIJ designees applying for adjustment of status from a set of generally applicable grounds of inadmissibility and provides that other grounds of inadmissibility may be waived at the Attorney General's discretion. 8 U.S.C. §§ 1255(h)(2),

12094-IT, 2025 WL 2576819, at *8 (D. Mass. Sept. 5, 2025) (Finding SIJ recipient is not exempt "from removability based on his SIJ status."); *Benito Vasquez,* 2025 WL 1737216, at *2 ("The fact that petitioner has been given [SIJ] status has no effect on ICE's statutory and regulatory authority to detain him."); *Cortez-Amador v. Att'y Gen.*, 66 F.4th 429, 432, 433 n.11 (3d Cir. 2023) ("Congress could have rationally decided that SIJS recipients should be given the opportunity to apply for adjustment of status, while also contemplating that they may be removed if their application is denied or for another appropriate basis."); *United States v. Granados-Alvarado*, 350 F. Supp. 3d 355, 357 (D. Md. 2018) (Explaining that "an SIJ designation does not strip the U.S. government of all removal powers.").

**B.  Petitioner's Immigration and Criminal History.**

**1.  Petitioner Applies for Admission as an Arriving Alien.**

Petitioner is a native and citizen of El Salvador who applied for admission at the Hidalgo, Texas port of entry in 2016.  Doc. No. 16-1, ¶ 6.  CBP determined Petitioner was inadmissible to the United States and therefore issued him a NTA, charging him as an arriving alien.  *Id.*, ¶ 7; Doc. No. 23-2.  Petitioner was designated as an UAC and was transferred to ORR custody before he was eventually released to his father's custody.  *Id.*, ¶¶ 7-8.  Petitioner filed a SIJ petition with USCIS in 2019.  *Id.*, ¶ 10.  USCIS approved the SIJ petition that same year.  *Id.*, ¶ 14.

On July 3, 2025, ICE arrested Petitioner.  *Id.*, ¶ 22.  On July 21, 2025, an IJ conducted a bond hearing at which ICE argued Petitioner was not eligible for release as he was subject to mandatory detention as an arriving alien under 8 U.S.C. § 1225.  *Id.*, ¶ 28.  ICE also argued that

---

1182(a).  If an application for adjustment of status is granted, the individual receives Lawful Permanent Resident status. 8 U.S.C. § 1255(a).

Petitioner should not be released on account of his dangerousness and risk of flight if the IJ deemed him eligible for bond under 8 U.S.C. § 1226. *Id.* The IJ determined Petitioner was eligible for bond and ordered his release. *Id.*, ¶ 29.

On July 30, ICE filed an emergency motion for a discretionary stay of the IJ's bond order before the BIA pursuant to 8 C.F.R. § 1003.19(i)(1). *Id.*, ¶ 31. ICE also filed a notice of appeal of the bond order on the same day. *Id.* On July 30, ICE released Petitioner from custody without any conditions of release. *Id.*, ¶ 32. The BIA granted ICE's motion to stay execution of the bond order on that same day. *Id.*, ¶ 33. ICE arrested Petitioner on September 8, 2025 and he remains in ICE custody at Plymouth County. *See* Exhibit A, Supplemental Declaration of AFOD Chan, ¶ 6. On September 26, 2025, the IJ found that as a matter of discretion, any issues relating to the bond decision previously entered should be addressed by the BIA. *Id.*, ¶ 7. ICE's appeal of the IJ's bond order remains pending with the BIA. *Id.*, ¶ 9. Petitioner is scheduled for a hearing in Immigration Court on November 13, 2025. *Id.*, ¶ 10.

### 2. **Petitioner's Criminal History**.[6]

### C. <u>Petitioner's Habeas Petitions</u>.

Petitioner filed his original Petition on July 4, 2025, claiming that he was arrested and detained by ICE in violation of the Fifth Amendment's Due Process Clause and seeking an order that ICE release him immediately. Doc. No. 1, ¶¶ 22-27; PRAYER FOR RELIEF. Post-release from ICE custody, Petitioner filed an amended Petition on August 4. Doc. No. 12.

Petitioner then filed a Second Amended Petition on October 7. Doc. No. 23. Petitioner argues that his detention violates the Fifth Amendment's Due Process Clause on the theory that

---

[6] Respondents refer to Doc. No. 16 for a summary of Petitioner's criminal history due to the Court's order allowing Petitioner's motion to seal. Doc. No. 21.

the BIA's stay of the IJ's release order "is unconstitutional as applied to Petitioner, who is neither a danger to the community nor a flight risk". *Id.*, at 17, ¶ 5. He further argues that the BIA's stay "violates his substantive due process rights, which requires the opportunity to be heard at [a] meaningful time and in a meaningful manner" as he "has not received that opportunity here." *Id.*, at 18, ¶ 7. Petitioner claims that the BIA stay violates the Fifth Amendment under his belief that he cannot be subject to mandatory detention under Section 1225(b) due to his former status as a UAC and his receipt of SIJ classification. *Id.*, ¶ 8. Petitioner asks this Court to find his detention controlled by Section 1226 and that his continued detention violates the Fifth Amendment and therefore to order his release. *Id.* at PRAYER FOR RELIEF.

## STANDARD OF REVIEW

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allopath Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted). Title 28 U.S.C. § 2241 provides district courts with jurisdiction to hear federal habeas petitions unless Congress had separately stripped the court of jurisdiction to hear the claim. To warrant a grant of writ of habeas corpus, the burden is on the petitioner to prove that his custody is in violation of the Constitution, laws, or treatises of the United States. *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner.").

## ARGUMENT

This Court lacks jurisdiction to review the BIA's grant of ICE's motion to stay the IJ's release order. Even if 8 U.S.C. § 1226(e) did not prohibit judicial review of the BIA's decision,

Petitioner's detention is mandated by statute and neither his continued detention nor the BIA's decision violates the Constitution.  Petitioner has an administrative remedy available to him to challenge the BIA's allowance of ICE's motion to stay his release from detention—he can file a motion to reconsider which if allowed, would lead to his release from detention.  This Court, however, must reject Petitioner's request that it interfere with the BIA's discretionary decision to grant ICE's stay motion and this action must be denied.

**A.  8 U.S.C. § 1226(e) Prohibits Judicial Review of the BIA's Grant of ICE's Motion to Stay Removal.**

Petitioner's request that this Court find unconstitutional the BIA's grant of ICE's motion to stay removal must be declined as Congress has made clear that "discretionary judgment[s] regarding the application of [Section 1226] shall not be subject to review."  8 U.S.C. § 1226(e). Section 1226(e) further commands that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."  *Id.*  As such, this Court lacks jurisdiction to entertain Petitioner's request to find the BIA's grant of ICE's motion unconstitutional.

Section 1226(e) blocks judicial review of discretionary judgments and decisions by immigration officials regarding the arrest, detention, and issuance of bond per 8 U.S.C. § 1226. *Demore v. Kim*, 538 U.S. 510, 516-17 (2003).  *See also Jennings*, 583 U.S. at 295-96 (Section "1226(e) precludes an alien from challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release.") (cleaned up).  This is exactly what Petitioner challenges in this case as he asserts that the BIA's stay "is unconstitutional as applied to Petitioner, who is neither a danger to the community nor a flight risk".  Doc. No. 23 at 17, ¶ 5.

Section 1226(e) does not bar jurisdiction of a challenge to "the extent of the Government's detention authority under the statutory framework as a whole" or to a challenge as to "the constitutionality of the entire statutory scheme under the Fifth Amendment." *Jennings*, 583 at 296-97. But, if the challenge is simply to an IJ or BIA decision regarding bond as Petitioner has argued here, then Section 1226(e) squarely applies to strip a court of jurisdiction to review such claim. *See Nielsen v. Preap*, 586 U.S. 392, 401 (2019) (Explaining that Section 1226(e) "applies only to 'discretionary' decisions about the 'application of § 1226 to particular cases.").

Courts within this district recognize that Section 1226(e) prohibits judicial review of bond decisions made by the IJ or the BIA. In *Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 474–75 (D. Mass. 2010), the Court explained "that Congress has evinced clear and unequivocal intent that discretionary bail determinations under § 1226(a) should be made by the Attorney General or those to whom he has delegated this function." Citing Section 1226(e), the Court acknowledged that it lacked "jurisdiction to review a discretionary bail determination made pursuant to § 1226(a)." *See also Hamada v. Gillen*, 616 F. Supp. 2d 177, 181 (D. Mass. 2009) (Concluding that district court lacks jurisdiction under Section 1226(e) to review decisions by the IJ and the BIA to detain and deny bond to alien).

Other courts routinely conclude that Section 1226(e) strips jurisdiction to review IJ or BIA bond determinations, including whether a detainee is a danger to the community or whether to stay release pending appellate review. *See e.g., Arevalo-Guasco v. Dubois*, 2019 WL 4419380, at *2 (2d Cir. Sept. 17, 2019) (Court lacks jurisdiction to review findings regarding whether petitioner is a danger to the community); *A.*, 2023 WL 8469655, at *1 (Explaining that "the Court has doubts about whether it has jurisdiction to essentially review and reverse an order

14

of the BIA granting a stay pending the BIA's resolution of an administrative appeal."). This Court thus lacks jurisdiction to review the BIA's decision to stay Petitioner's release and his claim that such action was unconstitutional must be rejected.

**B.**  **Petitioner's Detention Comports with Statute and does not Violate the Constitution.**

Even if Petitioner could avoid Section 1226(e)'s jurisdiction stripping provision, Petitioner's detention is nonetheless authorized by statute and regulation and does not violate the Fifth Amendment's Due Process Clause.

**1.  Petitioner's Detention is Mandatory Pursuant to 8 U.S.C. § 1225(b).**

Petitioner's detention is mandated by 8 U.S.C. § 1225(b)(1) as he is an arriving alien who is inadmissible to the United States.  While he previously received additional legal protections due to his status as a UAC, he is now 22-years old, and therefore such protections no longer apply.  As another district court explained in a case with strikingly similar facts: "Because [petitioner] no longer met the statutory definition of a UAC when he was arrested by [ICE], he is not entitled to the legal protections afforded to UACs.  And because Congress has authorized—indeed directed—that immigrants without legal authorization be detained during the pendency of their removal proceedings, [petitioner's] detention does not violate his due process rights."  *Mendez Ramirez*, 612 F. Supp.3d at 204.

**a.  Petitioner is an Arriving Alien Subject to Mandatory Detention.**

Petitioner's claim that ICE's authority to detain him stems from 8 U.S.C. § 1226(a), rather than Section 1225(b), is legally flawed and must be rejected.  Petitioner applied for admission at a port of entry and therefore was designated as an arriving alien under Section 1225

and was issued a Notice to Appear reflecting that designation.  Doc. No. 23-2.[7]  As a UAC, CBP

transferred Petitioner to ORR custody under 8 U.S.C. § 1232(b)(3), CBP did not release

Petitioner from custody pursuant to Section 1226 and therefore his redetention is not governed

by this statute either.  Simply because Petitioner, as an UAC when he applied for admission

could not be subject to detention under Section 1225(b)(1) does not mean that now, at the age of

22, such prohibition against mandatory detention continues to apply.[8]

Petitioner's "once a UAC, forever a UAC" argument is without merit, as statute,

regulation, and caselaw instead demonstrate that after an Unaccompanied Alien *Child* turns 18,

such alien "is no longer a UAC and loses the special protections afforded to that subclass of

arriving aliens."  *Mendez Ramirez*, 612 F. Supp.3d at 214.  As that court noted, "[t]his 'once a

UAC, always a UAC' argument is not supported by any citation to legal authority.'"  *Id.* at 216.

Instead, as a 22-year-old who has not been admitted to the United States, Petitioner "is

once again subject to the general rules for arriving aliens" including the mandatory detention

provisions set forth by Section 1225(b)(1) and its associated regulations.  *Id.* at 214.  As

explained by the Supreme Court in *Jennings*, Section 1225(b)'s provisions "mandate detention of

applicants for admission until proceedings have concluded."  538 U.S. at 297.  In declining to

find a statutory requirement to conduct bond hearings for applicants for admission, the Supreme

---

[7] This Court, in finding that a petitioner was not subject to detention under 8 U.S.C. § 1225(b), explained that "[n]otably, the issuing officer appears to have explicitly *declined* to designate [p]etitioner as an 'arriving alien'.  *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025). Here, CBP did in fact designate Petitioner as an arriving alien on his NTA.

[8] CBP issued Petitioner a NTA because he could not be subjected to an expedited removal order on account of his then-UAC status.  8 U.S.C. § 1232(a)(5)(D)(i).

Court explained that "nothing in the statutory text imposes any limit on the length of detention

… and neither [statutory provision] says anything whatsoever about bond hearings." *Id.*

Petitioner argues that he was released from custody as a UAC pursuant to 8 U.S.C. §

1226 and therefore any future re-detention would also be governed by Section 1226. Doc. No.

23, ¶ 42. Petitioner, however, was not transferred by CBP to ORR pursuant to Section 1226,

instead, he was transferred pursuant to 8 U.S.C. § 1232(b)(3) and 8 C.F.R. § 236.3(f). Petitioner

acknowledges that he was not released pursuant to 8 U.S.C. § 1226(a), stating that his custody

and release was "governed by the scheme laid out in 8 C.F.R. § 236.3(f) and 8 U.S.C. § 1232(b),

(d)." Doc. No. 23, ¶ 42. Nothing in these provisions provide that a release of a UAC is

controlled by Section 1226. Instead, 8 C.F.R. § 236.3's provisions apply "to all minors in the

legal custody of DHS, including minors who are subject to the mandatory detention provisions of

the INA and applicable regulations" which include arriving aliens subject to detention under 8

U.S.C. § 1225(b) such as Petitioner. 8 C.F.R. § 236.3(a)(2).

The statutory and regulatory provisions that concern UACs "transferred responsibility for

care and custody of UACs who were in federal custody by virtue of their immigration status to

ORR; [they] did not alter their immigration status." *Mendez Ramirez*, 612 F. Supp. 3d at 206.

As such, a UAC who is an arriving alien such as Petitioner "is still properly classified as an

arriving alien, even though he was released" to ORR pursuant to Section 1232(b)(3). *Id.* at 219.

Petitioner next argues that a UAC can never be subject to mandatory detention under

Section 1225(b) even after turning 18 on the theory that this would be incongruous with 8 U.S.C.

§ 1232(c)(2)(B)'s command that a UAC who "reaches 18 and is transferred to [ICE] custody"

shall be placed "in the least restrictive setting available". Doc. No. 23, ¶ 43. Petitioner's

argument fails however, as this statutory provision does not apply to an individual, such as

Petitioner, who is no longer a UAC when arrested and detained by ICE.  This "least restrictive setting" determination only applies to a person who is a "minor", who "reaches 18", and "is transferred" to ORR custody.  8 U.S.C. § 1232(c)(2)(B).  At the time of Petitioner's arrest by ICE in September 2025, Petitioner satisfied none of these statutory criteria as he was 22 years old.  The district court in *Mendez Ramirez* squarely rejected this same argument, finding that because the petitioner was over 18 and was "not a UAC when he was arrested by ICE [he] was not entitled to a least restrictive setting determination under Section 1232(c)(2)(B)."  612 F. Supp. 3d at 212.  *See also Jose L.P.*, 431 F. Supp. 3d at 550 (Concluding that the "least restrictive setting determination" did not apply as he no longer fit the definition of a UAC when arrested by ICE).

This conclusion is supported by regulation which specifies that a previously designated UAC is "no longer a UAC" when he reaches the age of 18 and that such alien, once 18, "is not eligible to receive legal protections limited to UACs under the relevant sections of the Act."  8 C.F.R. § 236.3(d)(2).  For an alien who is no longer a UAC, relevant "ICE procedures shall apply" which include being subject to mandatory detention under Section 1225(b)(1) as an arriving alien.  *Id.*, § 236.3(d)(3).  *See also Mendez Ramirez*, 612 F. Supp. 3d at 214 (Once a UAC turns 18, he "loses the special protections afforded to that subclass of arriving aliens … [and] is once again subject to the general rules for arriving aliens, including Section 1003.19(h)(2)(i)(B)'s prohibition on bond hearings.").

The rejection of Petitioner's "once a UAC, always a UAC" argument is also counseled by common sense, as his interpretation would extend the protections indefinitely to former UACs. If Congress intended that result, it would have done so within the provision entitled "Permanent Protection for Certain At-Risk Children" found at 8 U.S.C. § 1232(d), but it did not do so.  *See*

18

*Jose L.P.,* 431 F. Supp. 3d at 550 ("There is no good argument that [p]etitioner should *still* be treated as an unaccompanied 'child' after his 18th birthday.)

Finally, Petitioner argues that his detention is controlled by 8 U.S.C. § 1226(a) because ICE issued a Form I-286 Notice of Custody Determination and an I-200 Warrant of Arrest when he was arrested.  Doc. No. 23, ¶ 47.  ICE's utilization of these documents, however, cannot alter Petitioner's status as an arriving alien and the applicability of Section 1225(b)(1)'s mandatory detention provision as a result.  As the BIA recently explained, "being arrested pursuant to a warrant and placed into removal proceedings does not constitute an admission."  *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 228 (BIA Sept. 5, 2025).[9]  Similarly explained by another district court, the utilization of an I-286 Notice of Custody Determination or the release of an alien on bond "cannot change [p]etitioner's status [as an applicant for admission] under the law."  *Romero v. Bondi*, No. 1:25-CV-993 (RDA/WEF), 2025 WL 2490659, at *2–3 (E.D. Va. July 2, 2025).  This Court's decision in *Martinez* where the Court noted the existence of an I-286 Notice of Custody Determination as evidence that Section 1226(a) controlled ICE's detention authority is distinguishable from this Case because here there is no dispute that Petitioner applied for admission at a port of entry and was designated as an arriving alien at that time.  *Martinez*, 2025 WL 2084238, at *4.  Further, here, unlike in *Martinez*, Petitioner was not released from custody pursuant to an Order of Recognizance which the Court found "explicitly premises her release on section 1226".  *Id.* at *3.

**b. Petitioner's receipt of SIJ classification does not prohibit detention.**

___

[9] The BIA has also explained that "[o]nce an alien is detained under section [1225], DHS cannot convert the statutory authority governing her detention from section [1225] to section [1226] through the post-hoc issuance of a warrant."  *Matter of Q. Li*, 29 I. & N. Dec. 66, 69 n. 4 (BIA 2025).

Petitioner also argues that USCIS' grant of SIJ classification prevents him from being subject to mandatory detention (Doc. No. 23, ¶¶ 45-46) but this argument is without merit. As USCIS explains, "SIJ classification does not render a noncitizen lawfully present[] [and] does not confer lawful status." https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf. Multiple courts, both within this District and around the country, have explained that SIJ designation does not forestall arrest, detention and removal from the United States. *See e.g., Doe*, 2025 WL 2576819, at *8 (Finding that Section 1255(h)(2) "which governs applications for adjustment of status, does not exempt [p]etitioner from removability based on his SIJ status."); *Benito Vasquez*, 2025 WL 1737216, at *2-3 ("The fact that petitioner has been given [SIJ] status has no effect on ICE's statutory and regulatory authority to detain him.").

The Third Circuit has also found that an SIJ recipient can nonetheless be subject to removal on account of his inadmissibility to the United States. *Cortez-Amador*, 66 F.4th at 432 n.11 (Reasoning that "Congress could have rationally decided that SIJS recipients should be given the opportunity to apply for adjustment of status, while also contemplating that they may be removed if their application is denied or for another appropriate basis."). Other courts have found similarly. *See Granados-Alvarado*, 350 F. Supp. 3d at 357 (Holding that "the government retained the power to arrest, detain, and remove Granados-Alvarado in spite of his SIJ status" because of his underlying inadmissibility to the United States which is not waived for purposes of removability.); *Cruz-Gonzalez on behalf of D.M.S.C. v. Kelly*, No. CV 16-5727, 2017 WL 3390234, at *5 (E.D. Pa. Aug. 7, 2017) (Rejecting argument that SIJ approval grants lawful status and prevents removal and agreeing with government's argument that being "deemed

20

paroled" under 8 U.S.C. § 1255(h) "does not cancel a final order of removal or an underlying basis of inadmissibility or removability.").

Here, Petitioner's SIJ classification does not provide him with lawful immigration status in the United States and does not bar ICE from arresting and detaining him while he pursues relief from removal.[10]  While Petitioner cites *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 916 (E.D. Va. 2024) for the proposition that his procurement of SIJ classification changes his status from an arriving alien to an alien present in the United States, that case failed to cite any authority for its conclusion that an arriving alien subject to Section 1225 "converts" to an alien subject to Section 1226 and relied on facts that are not present in this case.  For example, the court noted that the petitioner was not charged as inadmissible as an arriving alien pursuant to INA § 212(a)(7)(i)(I) and also focused on the prolonged detention of petitioner.  *Id.*  Here, in contrast, Petitioner is charged as an arriving alien subject to this basis of inadmissibility and has been detained for less than two-months.

There simply is no statutory or regulatory support for the proposition that the receipt of SIJ classification changed Petitioner's status as an arriving alien seeking admission to the United States subject to detention under Section 1225(b)(1).[11]  Indeed, another court recently rejected a similar argument made by an SIJ applicant because that petitioner "came into the United States

---

[10] Petitioner's asylum application is pending decision with USCIS and Petitioner can also apply for adjustment of status while in Immigration Court (and renew his asylum application if it is denied by USCIS).

[11] Petitioner's citation to *Diaz-Calderon v. Barr,* 535 F. Supp. 3d 669, 674 (E.D. Mich. 2020) is also inapposite as that court determined Section 1225(b) did not apply in significant part due to that alien's parole into the United States pursuant to a district court order after the petitioner had been unlawfully removed from the United States.

at a port-of-entry as an applicant for admission … [and] [t]hus, by definition, he is an arriving alien." *Contreras v. Oddo*, No. 3:25-CV-162, 2025 WL 2104428, at *4 (W.D. Pa. July 28, 2025).   As such, the court found that petitioner's "detention is mandatory absent DHS's discretionary decision to parole the alien; and the alien is not entitled to a bond hearing."  *Id.*

This same logic applies to an arriving alien such as Petitioner who received SIJ classification after transfer to ORR custody and defeats his argument that he is no longer an arriving alien subject to detention under Section 1225(b)(1).

**2.  Petitioner's Detention is Constitutional**.

Petitioner's claim that his detention violates the Fifth Amendment's Due Process Clause is without merit as the Supreme Court has held that applicants for admission such as Petitioner are only entitled to the protections set forth by statute and that "the Due Process Clause provides nothing more." *Thuraissigiam*, 591 U.S. at 140.  Petitioner does not allege any deprivation of any of the protections set forth by Section 1225 and therefore his due process claim fails.  *See Benito Vasquez,* 2025 WL 1737216, at *2 (Denying due process claim to detainee subject to Section 1225 because "ICE has acted within its authority to detain petitioner while it conducts the procedure necessary to determine" if a credible fear exists).  Additionally, the BIA's stay of the IJ's release order did not violate Petitioner's due process rights as Petitioner had the opportunity to seek reconsideration of the stay for over a month prior to ICE's re-detention of Petitioner (and can still file a motion to reconsider today).

**a.  Petitioner's Due Process rights stem from those provided by statute and regulation.**

The Supreme Court has long recognized that "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."  *Landon v. Plasencia*, 459 U.S.

21, 32 (1982).  The Supreme Court has explained that applicants for admission lack any constitutional due process rights with respect to admission aside from the rights provided by statute: "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned," *Mezei*, 345 U.S. at 212, and "it is not within the province of any court, unless expressly authorized by law, to review [that] determination".  *Shaughnessy*, 338 U.S. at 543.

The Supreme Court reaffirmed "[its] century-old rule regarding the due process rights of an alien seeking initial entry" in *Thuraissigiam*, explaining that an applicant for admission "has only those rights regarding admission that Congress has provided by statute." 591 U.S. at 139-40.  As explained by the Court, "[w]hen an alien arrives at a port of entry—for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country …".  *Id.* at 139.  All applicants for admission, "even those paroled elsewhere in the country for years pending removal" (*id.* at 139) "have no entitlement to procedural rights other than those afforded by statute."  *Id.* at 107.  The Court was clear: "the Due Process Clause provides nothing more" than the procedural protections set forth in 8 U.S.C. § 1225 that allow an individual to seek protection from removal if she fears return to her home country and also seek parole from the agency.  *Id.*  As such, applicants for admission, even those transferred from DHS custody to ORR custody and then re-arrested like Petitioner may be detained without a bond hearing pending admission or removal without running afoul of the Constitution.

The First Circuit also held that detention of an alien seeking admission to the United States does not violate due process in *Amanullah*, 811 F.2d at 9.  In that case, the Court explained that "the detention of the appellants is entirely incident to their attempted entry into the United States and their apparent failure to meet the criteria for admission—and so, entirely

within the powers expressly conferred by Congress." *Id.* The appellants were detained pursuant to 8 U.S.C. § 1225(b) and the Court found no due process violation in the denial of their parole applications "pending the ultimate (seasonable) resolution of the exclusion/asylum proceedings" as there was "no suggestion of unwarranted governmental footdragging in these cases" and because "prompt attention appears to have been paid to the administrative aspects of exclusion and asylum." *Id.*

This Court also recently held similarly in rejecting a claim that ICE's detention of a petitioner subject to 1225(b) detention violated due process. *See Benito Vasquez*, 2025 WL 1737216, at *2 (Finding that the "continued detention therefore does not offend the statutory and regulatory procedure to which the due process clause entitles him.") *See also Pena v. Hyde*, 25-11983-NMG, 2025 WL 2108913, *2 (D. Mass. July 28, 2025) (Petitioner's detention "comports with due process" as his detention as an applicant for admission, "is both authorized and required by a duly enacted statute".).

District courts around the country routinely find no due process violation for the detention of individuals subject to 8 U.S.C. § 1225(b). *See e.g.*, *Romero,* 2025 WL 2490659, at *2–3 (Despite release after issuance of expedited removal order, petitioner's due process rights as an applicant for admission "flow from those prescribed by Congress" and do not entitle him to release or bond hearing after re-arrest.); *Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 219 (S.D.N.Y. 2020) (Finding itself bound to apply *Mezei* in holding that alien's "detention does not violate due process because Congress has authorized mandatory detention for immigrants in [his] circumstances and that is sufficient to satisfy due process."); *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D. N.M. 2020) (*"Mezei* and its progeny do not hold that [p]etitioner has no due-process rights; rather, the applicable statutory process shapes her procedural due process

rights.  Because [p]etitioner has no statutory right to release or a bond hearing … she has no due-process right to the relief requested.").

Petitioner's substantive due process violation claim must be rejected.  The Supreme Court has repeatedly held that "[d]etention during deportation proceedings is a constitutionally permissible part of that process." *Demore*, 538 U.S. at 531.  Petitioner's detention by ICE serves a legitimate purpose – to ensure his presence for removal proceedings and to protect public safety.  As Petitioner's detention does not violate the Constitution, this Court therefore lacks authority to order Petitioner's release under 28 U.S.C. § 2241(c)(3).

**b.  Petitioner's Due Process challenge to the BIA's stay decision fails.**

Petitioner's Due Process challenge to the BIA's allowance of ICE's motion to stay the IJ's bond order is without merit as Petitioner has had ample opportunity to oppose the BIA's decision.  Here, ICE moved for a discretionary stay of removal from the BIA and did not utilize the regulatory method that triggers an automatic stay of a release order.  Another session of this Court recently noted its approval of the discretionary stay provision used by ICE in this case.  *See Sampiao v. Hyde,* No. 1:25-CV-11981-JEK, 2025 WL 2607924, at *11 (D. Mass. Sept. 9, 2025) (Agreeing with the reasoning of other Courts that the discretionary stay "procedure mitigates the concern about DHS usurping the neutral adjudicatory role and provides additional safeguards that the automatic stay provision lacks.").

Courts around the country have similarly recently found no due process violation in the BIA's allowance of a discretionary stay.  *See e.g.*, *Gunaydin v. Trump*, 784 F. Supp. 3d 1175, 1189 (D. Minn. 2025) (Explaining that the discretionary stay "process cures the due process infirmities of § 1003.19(i)(2) while preserving the government's interest in preventing an erroneous release."); *Jose Augusto Alves da Silva v. US Immigr. & Customs Enf't, Bos. Field Off.*

*Acting Dir. et al.*, No. 25-CV-284-LM-TSM, 2025 WL 2778083, at *5 (D.N.H. Sept. 29, 2025) (Finding that applying for a discretionary stay "would mitigate the risk of erroneous deprivation because such a stay would require the BIA to make some individualized determination as to whether the government is likely to succeed in arguing on appeal that the noncitizen's release poses a risk of danger or flight."); *Martinez v. Sec'y of Noem*, No. 5:25-CV-01007-JKP, 2025 WL 2598379, at *6 (W.D. Tex. Sept. 8, 2025) (Determining the discretionary stay provision to be "appropriate" and a "narrowly tailored, less restrictive means" to protect the government's interest while not interfering with alien's liberty interest.); *Herrera v. Knight*, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792, at *11 (D. Nev. Sept. 5, 2025) (same); *Leal-Hernandez v. Noem*, No. 1:25-CV-02428-JRR, 2025 WL 2430025, at *14 (D. Md. Aug. 24, 2025) (same).

These recent decisions are supported by decisions from other courts dating back more than twenty years that also found the discretionary stay provision constitutional. *See e.g.*, *Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1077 (N.D. Cal. 2004) ("The emergency stay provision found in 8 C.F.R. § 1003.19(i)(1) presents an appropriate and less restrictive means whereby the government's interest in seeking a stay of the custody redetermination may be protected without unduly infringing upon Petitioner's liberty interest."); *Bezmen v. Ashcroft*, 245 F. Supp. 2d 446, 451 (D. Conn. 2003) (same).

As explained by another district court, "disagreement with the BIA's expeditious resolution of ICE' s motion in ICE' s favor does not rise to a level of a violation of his right to procedural due process." *El-Dessouki*, 2006 WL 2727191, at *3. The court in that case also found no substantive due process violation from the BIA's allowance of the stay, explaining that petitioner did not face indefinite detention and that the government had strong "interest in preventing flight of aliens likely to be ordered removable and in protecting the community". *Id.*

26

Petitioner argues that with the BIA's swift allowance of the motion to stay he did not receive "an opportunity to be heard at a meaningful time and in a meaningful manner." Doc. No. 23, ¶ 53. Petitioner, however, had over 30 days to file a motion to reconsider the BIA's grant of the motion to stay before he was re-detained by ICE and could still file a reconsideration motion presently. Petitioner's claim that his failure to file a motion to reconsider should be excused as an exercise in futility is without merit. Petitioner incorrectly claims that the BIA would need to find that it deprived Petitioner of due process in ruling on a motion to reconsider. Instead, the BIA would be required to consider whether it erred in finding that ICE has demonstrated a likelihood of success on the merits of its claim that either the IJ erred in finding that Petitioner was eligible for bond, or alternatively, that the IJ erred in finding that ICE failed to meet its burden to demonstrate he should not be released on account of danger to the community. *See Nken v. Holder*, 556 U.S. 418, 425-426 (2009).

As such, Petitioner's claim that a procedural due process violation occurred with the BIA's prompt grant of ICE's motion to stay fails as Petitioner nonetheless had the necessary opportunity to be heard and he cannot establish prejudice. *Conde Cuatzo v. Lynch*, 796 F.3d 153, 156 (1st Cir. 2015) ("To make out a due process violation, a claimant must show that a procedural error led to fundamental unfairness as well as actual prejudice."). As in *Conde Cuatzo*, Petitioner cannot establish either element especially because "he has not shown, or even suggested, that he was prevented from presenting" his arguments against the BIA's allowance of the stay. *Id.* at 157.

Courts have recognized that due process is not violated by the BIA's grant of a motion to stay, even if the motion is granted prior to the alien responding to the motion because the alien can file a motion for reconsideration. For example, one court recently explained that "even if the

Court had the authority to intervene in the ongoing administrative process—the appropriate remedy would not be to release [petitioner], but to order that he be heard in opposition to the government's motion." *A.*, 2023 WL 8469655, at *2.  The court explained, however, that "[a]s a practical matter, however, [petitioner] has already been given that opportunity, as he was able to make his arguments in his (pending) motion for reconsideration." *Id.*  Another court found similarly, explaining that the petitioner "could have then, and he still could now, file … a motion for reconsideration of the BIA's discretionary stay." *Organista,* 2018 WL 776241, at *3 (Noting that due process is a "flexible concept" and finding that petitioner who did not receive opportunity to contest discretionary stay of release had not shown likelihood of success on claim that he had not received sufficient opportunity to be heard, given availability of reconsideration motion).  Petitioner also still could file a motion to reconsider the BIA's allowance of the stay, and therefore he has access to the necessary opportunity to be heard to satisfy the Fifth Amendment's Due Process Clause.  For these reasons, Petitioner's claim that his detention violates the Fifth Amendment fails.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the Second Amended Petition.

<div style="margin-left:50%">

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

</div>

Dated: October 14, 2025                    By:    */s/ Mark Sauter*
                                                  Mark Sauter
                                                  Assistant United States Attorney
                                                  United States Attorney's Office
                                                  1 Courthouse Way, Suite 9200
                                                  Boston, MA 02210
                                                  Tel.: 617-748-3347
                                                  Email: mark.sauter@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.


Dated: October 14, 2025                  By:    */s/ Mark Sauter*
                                                Mark Sauter
                                                Assistant United States Attorney