UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERTO VLADIMIR PORTILLO MARTINEZ, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>PATRICIA HYDE, Field Office Director, )<br>TODD LYONS, Acting Director U.S. )<br>Immigrations and Customs Enforcement, )<br>KRISTI NOEM, U.S. Secretary )<br>of Homeland Security, PAMELA BONDI, )<br>Attorney General of the United States, and )<br>and ANTONE MONIZ, Superintendent, )<br>Plymouth County Correctional Facility, )<br>)<br>Respondents. )<br>_____) | Case No. 1:25-cv-11909<br><br>**PETITIONER'S REPLY<br>TO GOVERNMENT'S<br>RESPONSE TO SECOND<br>AMENDED HABEAS PETITION**<br><br>*Leave to File Granted on*<br>*October 21, 2025* |

## **INTRODUCTION**

Petitioner hereby replies to the Respondents' October 14, 2025 Opposition to the Second Amended Habeas Petition. In its response and opposition, the government errs in arguing that Petitioner's designation at entry as an Unaccompanied Child and his subsequent grant of Special Immigrant Juvenile Status have no impact on the framework governing his custody, such that he has no liberty interests or due process rights despite his nine-year residence in the United States and significant ties to this country. On the contrary, canons of statutory interpretation supported by recent jurisprudence of this Court and others require this Court to find that both Petitioner's Unaccompanied Child designation as well as his Special Immigrant Juvenile Status bring his custody under the framework of 8 U.S.C. § 1226, such that the immigration judge exercised her lawful authority to conduct his bond hearing. Petitioner's significant liberty interests developed over his nine years of growing up, attending school, working, and establishing ties with the

1

community and his family in the United States and the risk of erroneous deprivation of his liberty after having already been granted bond counsel that the Board of Immigration Appeals' (BIA) unreasoned entry of a discretionary stay of the immigration judge's custody order within minutes of the government's motion both violated due process and exhibited a rubber-stamping of the government's request that violated the regulations mandating the Board exercise its independent judgment. For these reasons, the Court should find Petitioner's ongoing custody in violation of due process and order his immediate release.

## ARGUMENT

**1. This Court Has Jurisdiction to Review the BIA's Stay of the IJ's Custody Order**

The government first argues that 8 U.S.C. § 1226(e) bars this Court's review of the BIA's entry of a stay of the IJ's custody order under 8 C.F.R. § 1003.19(i)(1). However, 8 U.S.C. § 1226(e) does not bar constitutional challenges to decisions related to immigration custody. *Pensamiento v. McDonald*, 315 F.Supp.3d 684, 688-89 (D. Mass. 2018) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 295-96, 138 S.Ct. 830, 841 (2018); *Ozturk v. Trump*, 777 F. Supp. 3d 26, 34 & n. 1 (D. Mass. 2025). The issuance of the stay without opportunity to respond or any indicia of legal reasoning was no more than a rubber-stamping of the government's stay request and violated the requirement that the BIA exercise independent judgment in its determinations. *See* 8 C.F.R. § 1003.1(d)(1)(ii). Petitioner's challenge to the stay raises procedural and substantive due process challenges as well as a claim of legal error, issues of law which this Court retains jurisdiction to review.

**2. The BIA's Stay of the IJ's Custody Order is Unconstitutional as Applied**

The government in its response does not squarely address the extremely troubling nature of the BIA's expeditious entry of the stay of the IJ's custody order only minutes after the

2

government's motion was accepted for filing.  The government first relies on the argument that Petitioner is detained pursuant to 8 U.S.C. § 1225 and therefore has no due process rights outside of those provided by the statute.  Doc. No. 28 at p. 22-25.  For this proposition, the government relies upon precedent wherein the Petitioners in ICE custody had not spent significant time in the U.S. between their entry into the U.S. and their challenged detention and not established residence or ties to the U.S. *See Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 114, 140 S.Ct. 1959, 1967-68 (2020); *Shaughnessy v. U.S. ex rel Mezei*, 345 U.S. 206, 208-09, 73 S.Ct. 625, 627 (1953); *Amanullah v. Nelson*, 811 F.2d 1, 8 (1st Cir. 1987).

Petitioner here, however, has spent nine years in the U.S. growing up, attending school, working, and living with his family.  Those like Petitioner "who have established connections in this country have due process rights in deportation proceedings." *Thuraissigiam*, 140 S.Ct. at 1963-64; *see also Dos Santos v. Noem*, No. 25-cv-12052-JEK, 2025 WL 2370988, at *6 (D. Mass. Aug. 14, 2025) (evaluating the liberty interests of a noncitizen who entered as an arriving alien but subsequently spent seven years residing in the U.S.).

This Court need not reach the issue of the amount of due process afforded a long-time resident noncitizen detained under 8 U.S.C. § 1225 because, as established below, Petitioner is detained pursuant to 8 U.S.C. § 1226 and has been processed by the government as such.  The absence of notice and opportunity to respond, as well as the absence of any reasoning in the BIA's decision staying the IJ's custody order raise significant due process concerns and underscore that stays pursuant to 8 C.F.R. § 1003.19(i)(1) have no procedural safeguards or standards for decision. *See, e.g., Hamama v. Adduci*, No. 17-cv-11910, 2018 WL 1905074, at *2 (E.D. Mich. Apr. 23, 2018).  As it was issued here, the BIA's decision – a rubber stamp of the government's request for the stay - was no different from an autostay under 8 C.F.R. §

1003.19(i)(2), where the government has unilateral power to extend detention. *See Sampiao v. Hyde*, — F.Supp.3d —, 2025 WL 2607924 at *10 (D. Mass. 2025).

This Court has already found that the BIA's use of the autostay violates due process. *Id.* at *12. The due process calculation is no different in the instant case. As discussed in his second amended habeas petition, Petitioner has significant private liberty interests at stake. Doc. No. 23 at ¶ 55. These interests stand in contrast to the average time of 200 days to process a BIA bond appeal and potentially even longer to process Petitioner's defenses to removal, during which Petitioner would remain detained. *See Dos Santos*, 2025 WL 2370988, at *5, n.10 (citing *Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1248 (W.D. Wash. 2025)). Just as with an autostay, the risk of the erroneous deprivation of Petitioner's liberty interest is high because the discretionary stay is applied to "only those noncitizens who have already demonstrated their entitlement to release from detention," and, as it was effected here, empowered the Petitioner's custodian to override the immigraiton judge's release decision without giving Petitioner an opportunity to be heard. *Sampiao*, 2025 WL 2607924 at *10. The government cannot, and in fact does not, claim that it has legitimate concerns regarding safeguarding the public or ensuring Petitioner's appearance at future hearings, as Petitioner did appear for his immigration appointment and is not alleged to have engaged in any problematic behavior while he remained released but subject to redetention pursuant to the stay in question. Therefore, the balance of factors counsels that the stay of the IJ's order violated Petitioner's due process rights and he is entitled to immediate release. *See Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893 (1976); *Sampiao*, 2025 WL 2607924 at *12.

Finally, the government's argument that Petitioner should have to exhaust his remedies through a motion to reconsider the BIA's stay, or that a motion to reconsider could otherwise

cure due process concerns, fails. A motion to reconsider after the deprivation of liberty has already occurred does not cure due process concerns. *See, e.g., Hamama*, 2018 WL 1905074 at *2; *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-18, 70 S.Ct. 652, 657-59 (1950). And where, as here, interests of exhaustion are common-law rather than statutory, liberty interests and irreparable harm of incarceration pending further exhaustion weigh heavily against requiring exhaustion. *See Dos Santos*, 2025 WL 2370988, at *5. In any event, the 30-day deadline for a motion to reconsider has now lapsed, which is a deadline regularly enforced by the BIA. 8 C.F.R. § 1003.2(b)(2); *see, e.g.*, *Sandoval Argueta v. Bondi*, 137 F.4th 265, 275 (5th Cir. 2025); *Molina Mendez v. Bondi*, No. 24-2176, 2025 WL 2848910 at *1 (4th Cir. Oct. 8, 2025).

Even if this Court had reviewed the instant petition within that 30-day window, the absence of procedural protections *prior to* Petitioner's re-detention counsels that he was deprived of due process, and his ongoing incarceration outweighs the interest of further challenging the stay before the BIA.

3. **The Custody of Individuals Who Entered the U.S. as Unaccompanied Children, after Turning Eighteen, is Governed by 8 U.S.C. § 1226 and Cannot be Governed by 8 U.S.C. § 1225**

The government argues that, because Petitioner is now 22 years of age, he can no longer be protected by the provisions of the Trafficking Victims Protection Reauthorization Act ("TVPRA") for Unaccompanied Children (UCs). The government misses the point. Although there are several provisions under the TVPRA for continuing protections of those who entered as UCs,[1] even after turning 18, the point is that the language of the TVPRA brings individuals once

---

[1] *See* 8 U.S.C. § 1158(a)(2)(E) (regarding the inapplicability of the one-year-filing deadline for asylum for those designated UCs); 8 U.S.C. § 1158(b)(3)(C) (regarding the initial jurisdiction of an asylum application filed by a UC); *see also* Settlement Agreement in *J.O.P. v. DHS*, No. 8:10-cv-01944-SAG at Doc. No. 199-2 (D. Md. Nov. 25, 2004).

designated as UCs under the custody framework of 8 U.S.C. § 1226.

The government's suggestion that a UC who has turned 18 and been labeled an "arriving alien" on their Notice to Appear is subject to mandatory detention under 8 U.S.C. § 1225 would squarely conflict with the language of 8 U.S.C. § 1232(c)(2)(B), stating that DHS, for such an individual, "*shall* consider placement in the least restrictive placement available after taking into account the alien's danger to self, danger to the community, and risk of flight" (emphasis added). The government's proposition would render UCs who have arriving alien designations on their Notices to Appear and were then transferred from Office of Refugee Resettlement (ORR) to DHS custody upon turning 18 to be both statutorily eligible under § 1232 for release and simultaneously ineligible under § 1225 for release. This result should be avoided. The TVPRA's language mandates DHS to contemplate the very factors assessed in a custody determination under 8 U.S.C. § 1226(a). *See Brito v. Barr*, 415 F. Supp. 3d 258, 271 (D. Mass. 2019). This mandate is completely incongruent with the discretionary language of 8 U.S.C. § 1182(d)(5)(A) (stating that DHS "may" release on parole applicants for admission detained under 8 U.S.C. § 1225), and therefore 1232(c)(2)(B) cannot be viewed as an exercise of DHS's parole authority for arriving aliens.

In short, the TVPRA resets the way that the individual's custody is viewed under the law and brings all UCs, after turning 18, under the framework of 8 U.S.C. § 1226. This understanding makes particular sense in the instant case because an individual like Petitioner designated a UC who has been processed into the U.S. and residing here for several years cannot suddenly be seeking admission. *See Martinez Cruz v. Hyde*, No. 25-cv-12854-IT at *2 (D. Mass. Oct. 10, 2025) (finding that a post-18 petitioner previously designated a UC and designated an arriving alien on her Notice to Appear was subject to 8 U.S.C. § 1226 given Petitioner's long

6

residence in the U.S. after her release from ORR custody); *Dos Santos*, 2025 WL 2370988 (finding that a Petitioner who had been in expedited removal proceedings as an arriving alien at the border but was subsequently released, placed into removal proceedings, and spent seven years in the U.S. was subject to 8 U.S.C. § 1226); *see also Torres v. Wamsley*, No. *Torres v. Wamsley*, No. C25-5772 TSZ, 2025 WL 2855379, at *3–5 (W.D. Wash. Oct. 8, 2025) (finding a Petitioner previously designated a UC and who had been paroled at the border to be subject to 8 U.S.C. § 1226).

**4. Individuals Designated Special Immigrant Juveniles Cannot be Subject to Detention under 8 U.S.C. § 1225.**

In 2019, Petitioner was granted Special Immigrant Juvenile Status (SIJS) on account of a Massachusetts juvenile court's finding that Petitioner's reunification with his father was not viable due to the father's abuse and neglect of Petitioner, placing him in his mother's custody, and finding that it is not in his best interests to return to El Salvador. As such, he is now eligible for lawful permanent residence. *See* 8 U.S.C. § 1255(h). The government's response first dedicates significant effort to argue that SIJS does not shield an individual from detention, which does not address Petitioner's arguments in this matter. ECF Doc. 28 at p. 20-21.

The government's second argument that a grant of SIJS does not affect Petitioner's designation on his Notice to Appear as an "arriving alien" is flawed. An award of SIJ status transforms any noncitizen who may have previously been deemed an "arriving alien" to an "alien present in the United States" per the language of the statute and considering the statutory, regulatory, and subregulatory framework for SIJS, thereby bringing the detention of a SIJS grantee, if any, under the framework of 8 U.S.C. § 1226. *Rodriguez v. Perry*, 747 F.Supp.3d 911, 916 (E.D.VA. 2024). Addressing whether a SIJ grantee is properly detained under 8 U.S.C. § 1225 or § 1226, the *Rodriguez* court ruled that, because "the INA defines a 'special immigrant'

7

as 'an immigrant who is present in the United States,'" a noncitizen's "SIJ status weighs in favor of finding that . . . he was an 'alien present' in the United States and was entitled to a bond hearing" under 8 U.S.C. § 1226(a). *Id.*

The government takes issue with the *Rodriguez* court's conclusion, which it labels as unsupported. This is not so. In concluding that SIJS affords significant procedural protections and benefits consistent with being entitled to due process and an individualized bond hearing, the *Rodriguez* court first found support in the text of the INA: "For purposes of SIJ status, the INA defines a 'special immigrant' as 'an immigrant who is present in the United States.' 8 U.S.C. § 1101(a)(27)(J)." *Rodriguez*, 747 F.Supp.3d at 916. Additionally, the *Rodriguez* court engaged in extensive statutory and regulatory analysis of the treatment of SIJS in the INA and regulations, giving significant weight to the legislative history of the TVPRA and Congressional intent in creating SIJS. *See* 8 U.S.C. § 1227(c); 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c). The *Rodriguez* court found support for procedural rights afforded to SIJS grantees in USCIS policy, citing to 7 USCIS Policy Manual, pt. F, ch. 7 (Mar. 21, 2018) and the "Memorandum from Donald Neufeld, Acting Assoc. Dir., Domestic Operations & Pearl Chang, Acting Chief, Office of Policy & Strategy, USCIS, Trafficking Victims Protection Reauthorization Act of 2008: Special Immigrant Juvenile Status Provisions 3 (Mar. 24, 2009), https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/2009/TVPRA_SIJ.pdf *918 (citing H.R. Rep. No. 105-405, at 130 (1997) (Conf. Rep.))." *Rodriguez*, 747 F.Supp.3d at 917-18. The *Rodriguez* court also relied on the conclusions of other courts addressing the statutory and constitutional rights afforded to SIJS grantees. 747 F.Supp.3d at 918 (citing *Osorio-Martinez v. Attorney Gen. United States of Am.*, 893 F.3d 153, 170 (3d Cir. 2018); *Joshua M. v. Barr*, 439 F. Supp. 3d 632, 659 (E.D. Va. 2020); *Garcia v. Holder*, 659 F.3d

1261, 1271 (9th Cir. 2011); *Castro v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422, 447 (3d Cir. 2016)). To characterize the *Rodriguez* decision as unsupported is inaccurate.

The government further attempts to distinguish *Rodriguez* for relying on facts that are not present in Petitioner's case. This is odd, considering that the petitioner in *Rodriguez* presented himself at the Hidalgo Port of Entry, just as Petitioner did, only three years before Petitioner did, and, like Petitioner, was designated an "arriving alien" and placed into removal proceedings, designated a UC, and transferred to ORR custody, before being released to a family sponsor. *Rodriguez,* 747 F.Supp.3d at 914. The entry of the *Rodriguez* petitioner into the U.S. is both factually and legally identical to that of Petitioner here. Like Petitioner here, the *Rodriguez* petitioner filed a SIJS petition which was granted by USCIS while he was still a minor, and his removal proceedings were administratively closed (just as here) before the petitioner was redetained by DHS after his 18th birthday (just as here). *Id.* Precisely what facts the *Rodriguez* court could have relied on that are not present in Roberto's case is unclear at best, where the two cases are so similar factually and legally.

The government attempts to distinguish other authorities based on factual disparities. The government argues that the Eastern District of Michigan court's conclusions in *Diaz-Calderon v. Barr* to be "inapposite" where the petitioner was "parole[d] into the United States pursuant to a district court order after the petitioner had been unlawfully removed from the United States." ECF Doc. 28 at p. 21 n. 11. But there is no distinction between the *Diaz-Calderon* petitioner and Petitioner here, both of whom would be considered "arriving aliens" but for their SIJS approval (and, in the case of Petitioner here, his UC designation at entry). *Diaz-Calderon v. Barr*, No. 2:20-cv-11235-TGB, 2020 WL 5645191 at *11 (E.D. Mich. Sept. 22, 2020) (finding that a SIJS grantee could not be found subject to 8 U.S.C. § 1225, which would be premised upon

inadmissibility that no longer exists). In fact, the consequences of the removal of *Diaz-Calderon* petitioner with an approved SIJS while he awaited permanent residency eligibility is precisely the point that supports Petitioner's position here: "if he were removed before he received a visa and moved for an adjustment of status, he would forfeit his SIJ status and his statutorily-conferred opportunity to apply for permanent residency." *Diaz-Calderon v. Barr*, 535 F.Supp. 3d 669, 673 (E.D. Mich. Nov. 11, 2020). The ability to apply for permanent residency and solidify ties to the United States grounded in a state court's custody or dependency order necessarily carries with it some due process rights before it can be deprived through detention without bond, which in most cases would in turn deprive a SIJS grantee of the ability to await visa availability for permanent residency. While the *Diaz-Calderon* court rested part of its reasoning that the petitioner was entitled to a bond hearing under 8 U.S.C. § 1226 on the fact that the government affirmatively returned the petitioner to the United States, the court also justified its holding by noting that "[p]etitioner's new status as an SIJ applicant with an available visa and a pathway to legal permanent residency precluded any reversion to a status as an inadmissible alien." *Id.* at 674. This line of reasoning applies directly to Petitioner's case here.

This Court has also recently concluded that the grant of SIJS brings a detainee's custody under the framework of 8 U.S.C. § 1226. *See Martinez Cruz v. Hyde*, No. 25-12854-IT (D. Mass. Oct. 10, 2025) (holding that SIJS grantee in removal proceedings who had been designated a UC as well as an "arriving alien" on her Notice to Appear, when detained by ICE years later, was detained under 8 U.S.C. § 1226, not 8 U.S.C. § 1225); *Casun v. Hyde*, No. 25-CV-427-JJM-AEM, 2025 WL 2806769, at *2 (D.R.I. Oct. 2, 2025) ("He is also not seeking admission into the United States as he is already here and has had SIJS for nearly 2 years . . . Clearly, Section 1225 does not apply to him."); *Inlago Tocagon v. Moniz*, No. 25-CV-12453-MJJ, 2025 WL 2778023,

10

at *4 (D. Mass. Sept. 29, 2025) ("Mr. Inlago Tocagon's I-360 [SIJS] petition was granted on October 31, 2024 . . . At that time, Mr. Inlago Tocagon was deemed to have been paroled into the United States . . . These facts further affirm that Mr. Inlago Tocagon is subject to Section 1226(a)'s discretionary detention framework and is thus eligible for bond."). By virtue of his SIJS approval, which defines him as an "immigrant present in the United States, Petitioner's custody is governed by 8 U.S.C. § 1226.

5. **DHS's Use of a Warrant and Notice of Custody Determination do not change Petitioner's Status, but rather demonstrate that DHS itself viewed Petitioner as subject to 8 U.S.C. § 1226**

The government argues that the issuance of an I-200 Warrant of Arrest and I-286 Notice of Custody Determination to Petitioner referencing his detention under 8 U.S.C. § 1226 cannot alter his custody authority from § 1225 to § 1226. ECF Doc. 28 at p. 19. No alteration of custody authority has happened. Petitioner has, since his release as a UC from ORR custody in 2016, been subject to the framework of 8 U.S.C. § 1226, and the warrant and Notice of Custody Determination confirm as much. *See Dos Santos*, 2025 WL 2370988 at *6, *8 n.11 (finding that where a Petitioner had been in expedited removal proceedings as an arriving alien at the border, was subsequently released, and redetained in the interior, the Notice of Custody Determination issued upon his rearrest was persuasive in finding his custody subject to 8 U.S.C. § 1226); *Alves da Silva v. U.S. Immigration & Customs Enforcement*, — F.Supp.3d —, 2025 WL 2778683 at *3 (D. NH. Sept. 29, 2025) (finding the Notice of Custody Determination indicative that the government viewed Petitioner as subject to 8 U.S.C. § 1226); *Aguiriano Romero v. Hyde*, — F.Supp.3d —, 2025 WL 2403827 at *8 (D. Mass. Aug. 19, 2025) (same) *Gomes v. Hyde,* No. 25-cv-11571-JEK, 2025 WL 1869299 at *5 (D. Mass. July 7, 2025) (same).

**CONCLUSION**

Wherefore, this Court should allow Petitioner's immediate release, finding that his designation at entry into the U.S. as an Unaccompanied Child as well as his grant of Special Immigrant Juvenile Status, and given his long residence in the United States, place his custody under the framework of 8 U.S.C. § 1226 such the immigration judge operated within her legal authority to grant Petitioner bond. This Court should further find that the balance of Petitioner's liberty interests and the risk of erroneous deprivation of liberty outweighs the government's interests such that the issuance of the discretionary stay of the immigration judge's custody order as applied in this case violates Petitioner's due process.

Respectfully submitted,
Roberto Vladimir Portillo Martinez,
By his attorney,

Dated: October 21, 2025

 /s/ *Elizabeth Badger*

Elizabeth Badger
BBO # 663107
Political Asylum/Immigration
Representation (PAIR) Project
98 North Washington St, Ste. 106
Boston, MA 02114
(617) 545-3373
ebadger@pairproject.org

## CERTIFICATE OF SERVICE

I, Elizabeth Badger, hereby certify that this document filed through the ECF system will be sent electronically to the Respondents who are registered ECF participants as identified on the Notice of Electronic Filing (NEF).


Dated: October 21, 2025                                          /s/ *Elizabeth Badger*
                                                                 Elizabeth Badger
                                                                 BBO # 663107